UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BILLY GRIER,

                    Plaintiff,

-against-

CITY OF MOUNT VERNON and POLICE
DEPARTMENT OF CITY OF MOUNT VERNON,
DETECTIVE NICHOLAS STELLA and BRIAN
MCINTYRE

                    Defendants.

No. 16-cv-5146 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

On June 2, 2016, Plaintiff Billy Grier ("Plaintiff" or "Grier"), proceeding *pro se*, filed a complaint against the City of Mount Vernon, the Mount Vernon Police Department, Mount Vernon Police Detective Nicholas Stella ("Mount Vernon Defendants") and Brian McIntyre in the Supreme Court of Westchester County. (ECF No. 1 ("Notice of Removal"), Ex. 1 ("Complaint").) In his Complaint, Plaintiff alleges that he was wrongfully arrested, detained and imprisoned, and maliciously prosecuted for crimes he did not commit. (Compl. ¶ 1.) The Complaint alleges the following causes of action under 42 U.S.C. §1983 in violation of Plaintiff's Fourth and Fourteenth Amendment rights and New York state law: (1) False arrest and imprisonment, (2) abuse of process, (3) malicious prosecution, and (4) infliction of emotional distress. The case was removed to this Court on June 29, 2016. (ECF No. 1.) Now before the Court is Defendants' motion for summary judgment. (ECF No. 48.) Plaintiff has not

1

filed any opposition to the instant motion. For the following reasons, the Defendants' motion is GRANTED. Almost six months after Defendants' motion for summary judgment was filed and after the deadline to file an opposition had passed, Plaintiff submitted a motion for appointment of *pro bono* counsel. (ECF No. 52.) Plaintiff's motion is DENIED for the reasons discussed below.

## SUMMARY OF FACTS

On May 29, 2014, at approximately 11:30 a.m., Bryan McIntyre ("McIntyre")[1] appeared at the Mount Vernon Police Department ("MVPD") to file a criminal complaint. (Bushnell Decl., Ex. C ("Stella Aff.") ¶ 3, ECF No. 49.) He reported to Detective Nicholas Stella ("Detective Stella") that on May 18, 2014, while walking over the 1st Avenue and 1st Street Bridge, in Mount Vernon, he got into an argument with Plaintiff over money. (Stella Aff. ¶ 3); (Bushnell Decl., Ex. D ("Incident Report.")) Plaintiff struck McIntyre in the eye with an umbrella causing severe physical damage, and permanent blindness. (Stella Aff. ¶ 3); (Incident Report.) McIntyre was transported to Montefiore Hospital in New Rochelle. (Incident Report.)

McIntyre was in the hospital for approximately four days and is now blind is his right eye from the assault. (Stella Aff. ¶ 6.) Detective Stella thereafter investigated. (*Id.* ¶¶ 6 – 7.) McIntyre stated that the person who assaulted him was named "Billy" and that he was a male black, approximately 5'9, 180 pounds, with a medium complexion and round face. (*Id.* ¶ 4.) McIntyre also stated that Billy lived at 17 South 2nd Avenue, Apt. 20, McIntyre's previous residence, and provided Detective Stella with Billy's phone number. (*Id.* ¶ 4.) Detective Stella went to 17 South 2nd Avenue to investigate and spoke to the building security. Security provided him with a resident list from which he determined that an individual by the name William Grier

---

[1] This Court issued an Order of Default Judgment of Liability against Defendant Brian McIntyre. (ECF No. 22.)

who matched McIntyre's physical description and lived in apartment 20. (*Id*. ¶ 4.) Stella created a photo array and showed it to McIntyre, who positively identified Plaintiff as the individual who assaulted him. (*Id*. ¶ 8.) Plaintiff, who was already in police custody on an unrelated matter, was subsequently indicted on two counts of Assault in the First Degree, Criminal Possession of a Weapon in the Third Degree, and Menacing in the Second Degree. (*Id*. ¶ 9.) During his criminal case, Plaintiff moved to dismiss the indictment on the grounds of insufficient evidence. Westchester County Court Judge Barbara Zambelli found that all counts of the indictment were supported by sufficient evidence and that the instructions given to the Grand Jury were appropriate. (Bushnell Decl., Ex. I ("Zambelli, J. Decision.")). Plaintiff was tried before a jury and, following jury deliberations, he was acquitted of all charges.

In his deposition testimony on November 27, 2017, Plaintiff states that he and McIntyre lived in the same building together for six to eight months. (Pl. Tr. 39: 4-6.) Plaintiff stated that they did not care for each other. (Pl. Tr. 39:14-15.) Plaintiff stated that he felt McIntyre filed a false report against him because "he had to lie on somebody." (Pl Tr. 44:6-8.) During the deposition Plaintiff admitted that he was previously a drug dealer and surmised that his prior drug dealing may have been a reason McIntyre disliked him. (Pl. Tr. 44:20-25.)

Plaintiff testified that as a result of his arrest, he did not suffer any physical injuries. (Pl. Tr. 51:20-23.) He did, however, testify that he was emotionally injured and sought psychiatric treatment three or four times while detained at the Westchester County Jail. (Pl. Tr. 52:20-22.) He complained to his psychiatrist that he was "stressed out" because of his arrest. (Pl. Tr. 53:4-6.) He was not prescribed any medication. (Pl. Tr. 52:21-22.)

Plaintiff testified that he informed the MVPD he was innocent but was nevertheless arrested. According to Plaintiff's testimony, McIntyre waited nineteen days to report the alleged

3

assault to the police, and that the delay in filing the report should have properly raised suspicions. (Pl. Tr. 64:19-22.) When pressed about the existence of evidence indicating that the Defendants had knowledge of his innocence, he conceded that none existed. (Pl. Tr. 64:14-18.) Plaintiff was also unaware that McIntyre testified before the Grand Jury which resulted in his conviction but believed that the prosecution presented witnesses who lied. (Pl. Tr. 68:21-23.)

## STANDARD OF REVIEW

On a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson*, 477 U.S. at 248.

When an adverse party does not respond to a motion for summary judgment, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also United States Liab. Ins. Co. v. P. Mahoney Contracting Corp.,* No. 95-CV-9108(MGC), 1998 WL 895750, at *1 (S.D.N.Y. Dec. 21, 1998) (even when summary judgment motion is

unopposed, "judgment should not be granted in circumstances contrary to law"). "In an unopposed motion for summary judgment, plaintiff's recitation of the facts is assumed to be true." *Universal TV Distrib. Holdings LLC v. Walton*, No. 03-CV-9133(GBD), 2004 WL 2848528, at *2 (S.D.N.Y. Dec. 9, 2004); *see Wilson v. New Rochelle Police Dep't*, No. 13-CV-5997(NSR), 2014 WL 2624756, at *1 (S.D.N.Y. June 3, 2014) (noting that the plaintiff's recitation of facts is assumed to be true in an unopposed motion to dismiss filed by the defendant).

"After giving notice and a reasonable time to respond, the court may consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). However, the Second Circuit has also cautioned that the failure to oppose a summary judgment motion "alone does not justify granting summary judgment." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Instead, District Courts are required to "assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *Id.*

## DISCUSSION[2]

### I. False Arrest and Imprisonment

Plaintiff alleges that Defendants intentionally and unjustifiably detained him for ten months in the Westchester County Jail without probable cause, reasonable suspicion, or lawful authority and that Defendants failed to intercede in the previously described unlawful treatment of Plaintiff. (Compl. ¶ 16.) False arrest and false imprisonment are substantially similar

---

[2] Plaintiff appears to assert both federal and state law claims for each of his causes of action described in his Complaint. Therefore, the Court will consider the federal and state law aspects of each of Plaintiff's causes of action where possible.

5

claims. *Jenkins v. City of New York*, 478 F.3d 76, 88 & n.10 (2d Cir. 2007). Additionally, the Second Circuit has held that false arrest and false imprisonment claims may be considered together, *Posr v. Doherty*, 944, F.2d 91, 96 (2d. Cir. 1991), and that a New York law claim for false arrest is "substantially the same" as a § 1983 claim for false arrest. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Therefore, the Court will address whether Defendants should be granted summary judgment on all of Plaintiff's claims asserted in his first cause of action together.

To support a claim for false arrest under § 1983 or New York law, a plaintiff must show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). Importantly, probable cause is a complete and absolute bar to a plaintiff's recovery of damages under §1983. *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d. Cir. 2013); *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d. Cir. 2010); *Jaegly v. Couch*, 439 F.3d, 149 154 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S.146, 153 (2004)). An officer has probable cause to arrest "when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Jaegly*, 439.F.3d. at 152 (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)). A court is required to consider only "those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d. Cir. 2006) (internal quotation mark omitted) (emphasis omitted).

Probable cause is an objective determination that hinges upon the information available to the officer at the time of the arrest and does not account for subjective motivations or interpretations. *See Whren v. United States*, 517 U.S. 806, 813 (1996). A reviewing court must examine "each piece of evidence and consider[ ] its probative value, and then 'look[s] to the totality of circumstances' to evaluate whether there was probable cause to arrest and prosecute the plaintiff." *Stansbury*, 721 F.3d at 89 (quoting *Panetta,* 460.F.3d at 395). The validity of an arrest "does not depend upon an ultimate finding of guilt or innocence." *Hausmann v. Fergus*, 894 F. Supp. 142, 147 (S.D.N.Y. 1995) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)).

Rather, an officer's determination is deemed to be objectively reasonable if there was arguable probable cause at the time of the arrest. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d. Cir. 2007). In the case where police officers receive information from a single victim or eyewitness, probable cause exists unless there is "any obvious reason for skepticism." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d. Cir. 2012) (citing *Curley v. ViIIage of Suffern*, 268 F.3d 65, 70 (2d. Cir. 2001)) ("When information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity.").

Once a law enforcement officer has a reasonable ground for believing there is probable cause, he is not "required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y. City Transit Auth.*, 124 F.3d 123, 128 (2d. Cir. 1997). Whether the plaintiff was eventually found not guilty by a jury is irrelevant to the probable cause determination at the time of arrest.

Moreover, an indictment by a grand jury creates a rebuttable presumption of the existence of probable cause. *Magniello v. City of New York*, 612 F.3d 149, 162 (2d. Cir. 2010). "That

7

presumption may be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.' " *Id*. (quoting *Colon v. City of New York,* 60 N.Y.2d at 83, 468 N.Y.S.2d at 456, 455 N.E.2d 1248). Finally, the fact that a jury found Plaintiff not guilty has no bearing on the validity of his arrest.

Here, Plaintiff was indicted on two counts of Assault in the First Degree, one Count of Criminal Possession of a Weapon in the Third Degree, and one count of Menacing in the Second Degree. It is well settled that an arrest will be found to be justified so as long as there is probable cause for any of the offense charged. *Devenpeck v. Alford,* 543 U.S. 146, 153 – 54 (2004). In their motion to dismiss, Defendants argue that probable cause existed to arrest for Assault in the First Degree. A person is guilty of Assault in the First Degree where "(1) with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument or (2) With the intent to disfigure another person seriously and permanently." N.Y. Penal Law §120.10; *see also Postell v. Bradt*, No. 09-CV-4893(ER)(LMS), 2015 WL 13203754 at *13 ( S.D.N.Y. June 9, 2015) (upholding jury instruction that explain the defining terms in the statute, including physical injury, intent and deadly weapon). While Plaintiff was confined for an extended period of time without his consent, the undisputed evidence demonstrates that Detective Stella had probable cause to arrest the Plaintiff. The evidence shows Detective Stella, a veteran of the MVPD, conducted a thorough investigation. There is no dispute that Plaintiff sustained an injury to his eye requiring medical attention. And there is no dispute that McIntyre provided sufficient information to identify the assailant. Detective Stella performed a photo array wherein McIntyre identified Plaintiff as the individual who assaulted him. Detective Stella handed over the details of his investigation to the Westchester County District Attorney's Office who

determined that probable cause existed. Based on the investigation, a felony complaint, signed by Detective Stella, was filed the district attorney's office. The fact that a jury found Plaintiff not guilty does not mean Detective Stella did not have probable cause, the legal standard, for arresting Plaintiff. Thus, Plaintiff's claim fails as a matter of law.

**II.    Abuse of Process**

To prevail on a claim for abuse of process under § 1983 and New York law, a plaintiff must show that a defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 164 (E.D.N.Y. 2016) (quoting *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 638 (S.D.N.Y. 2015)). While the existence of probable cause may not be a complete defense to an abuse of process claim, it may be probative in a court's assessment. *Mangino v. Inc. Vill. of Patchogue*, 814 F. Supp. 2d 242, 248 (E.D.N.Y.), *aff'd Magino v. Inc. ViII. of Patchogue*, 808, F.3d 951, 959 (2d. Cir. 2015); *Rao v. City of New York*, No. 14-CV-7422(RRM)(LB), 2018 WL 1582289 at *10 (E.D.N.Y. Mar. 29, 2018) (noting that "probable cause functions as a defense when the only evidence of improper purpose is the alleged lack of probable cause").

Here, there is insufficient evidence in the record upon which a reasonable jury could conclude that Defendants abused legal process. Plaintiff concedes in his deposition that he has no evidence to support this claim. Fatally, the record is void of any evidence to support a finding that Detective Stella knew that Plaintiff had not committed a crime but arrested him anyway. In contrast, Detective Stella had sufficient probable cause to believe that Plaintiff assaulted

9

McIntyre. The record does not contain an iota of evidence suggesting a collateral objective or evidence of intent to do harm.

### III. Malicious Prosecution

Malicious prosecution claims under § 1983 seek to vindicate the Fourth Amendment's protection against unlawful seizure. *See Albright v. Oliver,* 510 U.S. 266, 271–74 (1994). To succeed on a malicious prosecution claim under § 1983 or New York law, a party must show "(1) that the defendant commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson,* 316 F.3d 139, 143 (2d Cir. 2003); *see Ying Li v. City of New York*, 246 F. Supp. 3d 578, 604 (E.D.N.Y. 2017). "There must also be a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rutigiliano v. City of New York*, 326 F. App'x 5, 9 (2d Cir. 2009). The Second Circuit has held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin,* 591 F.3d 95, 98 (2d Cir. 2010); *cf. Swartz v. Insogna,* 704 F.3d 105, 109 – 10 (2d Cir. 2013) ("We have consistently held that a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance is required' suffers a Fourth Amendment deprivation of liberty.").

The probable cause standard in a malicious prosecution claim, as the Defendants note, is "slightly higher" than that required in a false arrest cases. *Stansbury v. Wertman*,721 F.3d 84, 95 (2d Cir. 2013). New York Law requires such facts and circumstances that would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury*, 721 F.3d at 95. To hold a

10

police officer liable for malicious prosecution, an officer "must do more than report the crime or give testimony," he must "be found to have initiated the prosecution." *Culpepper v. City of New York*, No. 14-CV-6585(ALC), 2016 WL 5334978 at *5 (S.D.N.Y. Sept. 21, 2016) (internal quotation marks omitted) (quoting *Manganiello v. City of New York,* 612 F.3d 149, 163 (2d Cir. 2010)). When analyzing such a claim, there is a presumption that the "prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding." *Alcantara c. City of New York*, 646 F. Supp 2d 449, 457 (S.D.N.Y. 2009) (quoting *Crenshaw v. City of Mount Vernon*, No. 06-CV-2722, 2008 WL 445223 at *8 (S.D.N.Y. Sept. 30, 2008)). The presumption may be rebutted where an officer "play[s] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *Manganiello*, 612 F.3d at 163 (internal quotation marks omitted) (quoting *Rohman v. N.Y. City Transit Auth.*, 215 F.3d, 163, 217 (2d. Cir. 2010)). No such showing has been made here.

Furthermore, a malicious prosecution claim after an indictment may only succeed if the plaintiff establishes the indictment was "produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Rothstein v. Carriere,* 373 F.3d 275, 282 – 83 (2d. Cir. 2004). Plaintiff fails to make such a showing in this case. Moreover, the alleged victim's delay in reporting the assault to Detective Stella does not amount to a showing of fraud, perjury, suppression of evidence or other police conduct undertaken in bad faith. All that exist are mere unsupported allegations.

Nor is there evidence in the record to indicate that Detective Stella initiated the prosecution. Detective Stella signed a felony complaint for Assault in the First Degree after presenting his investigation to the district attorney. The district attorney presented the information gathered to the grand jury. Signing a felony complaint does not meet the requisite

standard. There are no facts alleged that would permit an inference that Detective Stella pressured or "importuned" the ADA into bringing charges against the Plaintiff as the case law requires. Accordingly, a reasonable jury could not determine that Defendants subjected Plaintiff to malicious prosecution.

## IV. Intentional Infliction of Emotional Distress

To succeed on a claim of intentional infliction of emotional distress under New York law,[3] a plaintiff must show: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *Cuellar v. Love*, No. 11-CV-3632(NSR), 2014 WL 1486458, at *14 (S.D.N.Y. 2014) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)). Because the claim of intentional infliction of emotional distress is so disfavored, *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006), a plaintiff must typically show that the defendant's conduct has been "so extreme in degree" as to exceed "all possible bounds of decency." See *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983). Any allegations of suffering from severe emotional distress must be supported with objective evidence and not speculative claims. *Allam v. Meyers*, 906 F. Supp. 2d 274, 282 (S.D.N.Y. 2012) (*citing Roche v. Claverack Coop. Ins. Co.,* 59 A.D.3d 914,919 (N.Y. App. Div. 2009)); *Cusimano v. United Health Servs. Hosp., Inc.*, 91 A.D.3d 1149, 1152, (N.Y. App. Div. 2012); *Walentas v. Johnes*, 257 A.D.2d 352, 353 (N.Y. App. Div.1999); *Christenson v. Gutman*, 249 A.D.2d 805, 808–09, (N.Y. App. Div.1998)). Plaintiff's claim fails as a matter of law.

---

[3] There is no federal claim for intentional infliction of emotional distress. *Lamont v. City of New York*, 2014 WL 4829328, at *7 n.7 (E.D.N.Y. 2014).

12

After a review of the record, the Court concludes that there is no evidence to demonstrate that the Defendants, inclusive of Detective Stella, performed an intentional act with the purpose of causing or disregarding a substantial probability of causing severe emotional distress. The evidence demonstrates that Detective Stella investigated, weighed the information obtained, determined he had reasonable cause to believe a crime had been committed, and presented the information to the district attorney. His reasonable belief was corroborated when the grand jury decided to indict Plaintiff. Moreover, Plaintiff has not submitted evidence raising a material issue of fact warranting denial of Defendants' motion. Plaintiff testified at his deposition that he had no proof that the Defendants knew that Plaintiff had not committed the crime. Accordingly, and particularly because claims for intentional infliction of emotional distress are highly disfavored, a reasonable jury could not find based on the evidence that Plaintiff met the burden of showing intentional infliction of emotional distress.[4]

## V. Remaining Issues

### a. Qualified Immunity

Because the Court grants Defendants' motion for summary judgment on each of Plaintiff's claims, the Court need not consider whether Defendants would have been entitled to qualified immunity.

### b. Motion for the Appointment of *Pro Bono* Counsel

Plaintiff's motion for the appointment of *pro bono* counsel was made on December 4, 2018, well after Defendants' motion for summary judgment was filed on June 27, 2018 and Plaintiff's June 1, 2018 deadline to serve an opposition to Defendants' motion to dismiss had

---

[4] Plaintiff's Complaint also includes a claim for punitive damages, but the Court notes that punitive damages are not a claim but a remedy. As summary judgment is granted on Plaintiff's claims and there are no remaining claims, Plaintiff is not entitled to punitive damages.

13

passed. (ECF No. 43.) Even if the Court had decided, in its discretion, to appoint *pro bono* counsel for Plaintiff in this civil matter, the fact remains that Plaintiff had not replied to Defendants' motion for summary judgment as directed pursuant to a court order. (*Id.*) Because the Court has granted Defendants' motion for summary judgment, concluding the action, Plaintiff's motion is moot.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. Plaintiff's motion for the appointment of *pro bono* counsel is DENIED. The Clerk of the Court is respectfully requested to terminate the motions at Docket Nos. 48 and 52, enter judgement in favor of Defendants, and close the case. The Clerk of the Court is directed to mail a copy of this Opinion to Plaintiff at his address as listed on the docket and show proof of service on the docket.

Dated:  March 13, 2019  
        White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge